UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION      :
OF THE UNITED STATES OF AMERICA      :
FOR AN ORDER AUTHORIZING THE RELEASE :
OF HISTORICAL CELL-SITE INFORMATION  :
- - - - - - - - - - - - - - - - - - - x

19 MISC 402

        Tyler J. Smith, an Assistant United States Attorney for

the Eastern District of New York, hereby applies to the Court for

Orders pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing that

within seven days AT&T (the "service provider") disclose recorded

information identifying the base station towers and sectors that

received transmissions from 646-288-3317, a telephone issued by

the service provider and subscribed to by Bebars Baslan, 4725

Shimerville Road, Apartment 3, Clarence, New York ("SUBJECT

TELEPHONE 1") and 718-664-8135, a telephone issued by the service

provider and subscribed to by Bebars Baslan, 4725 Shimerville

Road, Apartment 3, Clarence, NY ("SUBJECT TELEPHONE 2")

(collectively, the "SUBJECT TELEPHONES"), at the beginning and

the end of calls or text message transmissions, and the mobile

switching center serving the SUBJECT TELEPHONES during any calls

or text message transmissions, for the period from 12:01 a.m. to

11:59 p.m. on March 19, 2013 (collectively, "the HISTORICAL CELL-

SITE INFORMATION").

        In support of this application I state the following:

        1.   I am an Assistant United States Attorney in the

Office of Loretta E. Lynch, United States Attorney for the

Eastern District of New York.  As such, I am a duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d) and, as such, am authorized to apply for Orders authorizing the disclosure of the HISTORICAL CELL-SITE INFORMATION.

2.  The Court is authorized to order the disclosure of the HISTORICAL CELL-SITE INFORMATION upon the government offering specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation.  18 U.S.C. § 2703(d).

3.  I have discussed this matter with a special agent of the Federal Bureau of Investigation ("FBI" and the "investigative agency"), who is involved in the investigation. Based upon my discussion with the agent, I believe that the information likely to be obtained is relevant to an ongoing criminal investigation as required by 18 U.S.C. § 2703(d). First, the investigative agency is conducting a criminal investigation into possible violations of federal criminal laws, including travel across state lines with intent to commit aggravated sexual abuse of a minor less than 12 years old, conspiracy to sexually exploit a child and attempted sexual exploitation of a child, and attempted coercion and enticement of a minor to engage in illegal sexual conduct, in violation of 18

U.S.C. §§ 2241(c), 2251(e), and 2422(b). Second, it is believed that Bebars Baslan and Kristen Henry, and others known and unknown, have used the SUBJECT TELEPHONES in furtherance of the above offenses. Third, HISTORICAL CELL-SITE INFORMATION will further the investigation by corroborating the observations of surveillance by FBI agents regarding Baslan and Henry's travel to engage in criminal activities.

4. Based upon discussions with a special agent of the investigative agency, the government hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation. In February 2013, a confidential source ("CS 1") reported to the FBI that Baslan and Henry possessed child pornography and were preparing to sexually exploit children. Over the course of the following month, at the direction of the FBI, CS 1 recorded telephone calls and in-person meetings with Baslan and Henry. During the course of these recordings, Baslan, Henry and CS 1 planned to meet at a hotel in New Jersey, so that Baslan and Henry could sexually exploit a 3-month-old baby, one-and-a-half-year-old toddler, and eight-year-old girl. The final plan was for Baslan and Henry to meet CS 1 on March 19, 2013 at the New Jersey hotel. On that day, the FBI set up surveillance on the hotel room arranged by CS 1 and arrested Baslan and Henry when

3

they arrived.  The SUBJECT TELEPHONES were seized from Baslan and Henry upon their arrest.  Baslan and Henry were arraigned in the Eastern District of New York on March 20, 2013 on a complaint, which is attached as Exhibit A.  On April 17, 2013, a grand jury returned an indictment charging Baslan and Henry with travel with intent to commit aggravated sexual abuse of a minor less than 12 years or age, conspiracy to sexually exploit a child, attempted sexual exploitation of a child, and coercion and enticement of a minor.  Baslan was also charged with possession of child pornography.  The indictment is attached as Exhibit B.

5.    Based upon the above proffer, the government requests that the Court issue Orders that provides, pursuant to 18 U.S.C. § 2703(c)(1) and (d), a directive to the service provider to supply within seven days the HISTORICAL CELL-SITE INFORMATION for the period from 12:01 a.m. to 11:59 p.m. on March 19, 2013.

6.    No prior request for the relief set forth herein has been made except to the extent set forth above.  The foregoing is affirmed under the penalties of perjury.  See 28 U.S.C. § 1746.

Dated:     Brooklyn, New York
           May 15, 2013

                                    _____
                                    Tyler J. Smith
                                    Assistant United States Attorney
                                    (718) 254-6186

4

# Exhibit A

JDL:TJS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | COMPLAINT |
| - against - | Mag. No. _____ |
| BEBARS BASLAN and KRISTEN HENRY, | (T. 18, U.S.C., §§ 2241(c)) |
| Defendants. | |

EASTERN DISTRICT OF NEW YORK, SS:

AARON SPIVACK, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

On or about March 19, 2013, within the Eastern District of New York and elsewhere, the defendants BEBARS BASLAN and KRISTEN HENRY crossed a state line with intent to engage in a sexual act with another person who had not attained the age of 12 years.

(Title 18, United States Code, Section 2241(c))

The source of my information and the grounds for my belief are as follows:[1]

**AGENT BACKGROUND**

1.     I have been employed as a Special Agent with the FBI since 2008 and am currently assigned to the New York Office. For approximately three years, I have been assigned to a Crimes Against Children squad. I have been assigned to investigate violations of criminal law relating to the sexual exploitation of children. I have gained expertise in this area through training in classes and daily work related to conducting these types of investigations. I have participated in a number of investigations into the receipt, possession, and/or distribution of child pornography by electronic means, as well as the sexual enticement of minors. As part of my responsibilities, I have been involved in the investigation of numerous child pornography cases and have reviewed hundreds of photographs depicting children (less than eighteen years of age) being sexually exploited by adults. Through my experience in these investigations, I have become familiar with methods of

---

[1] Because the purpose of this Complaint is to establish probable cause to arrest, I have not set forth all of the facts and

determining whether a child is a minor.  I have also gained

expertise regarding the use of computers in connection with

crimes against children.  I have received training relating to

the use of computers by offenders and gained expertise through

participating in numerous cases in which computers were used to

facilitate crimes against children.

    2.   I am familiar with the information contained in this

affidavit based on my own personal participation in the

investigation, my review of documents, my training and

experience, and discussions I have had with other law

enforcement personnel concerning the sexual abuse of children

and the creation, distribution, and proliferation of child

pornography.  Additionally, statements attributable to

individuals herein are set forth in sum and substance and in

part.

### PROBABLE CAUSE

    3.   On or about February 13, 2013, a Confidential Source

("CS 1") reported to the FBI that an associate of CS 1, BEBARS

BASLAN and BASLAN's girlfriend, KRISTEN HENRY, possess child

circumstances of which I am aware.

3

pornography and were preparing to sexually exploit children. CS 1 indicated that BASLAN told CS 1 that BASLAN and HENRY planned on opening a babysitting business as a cover to drug and sexually abuse children.  CS 1 further stated that in order to protect himself BASLAN wanted collateral he could use to blackmail HENRY, so BASLAN had asked CS 1 to provide a one-and-a-half-year-old child that is known to CS 1 ("VICTIM 1") to BASLAN so HENRY could be photographed giving oral sex to VICTIM 1.  CS 1 also stated that BASLAN indicated he obtained child pornography from Internet newsgroups.  Prior to February 13, 2013, CS 1 was not a Confidential Source of the FBI.  The information provided by CS 1 has been corroborated by subsequent recordings as discussed below.  CS 1 may face criminal charges in the future and is cooperating, in part, with the hope of reducing his ultimate sentence.

4.   Following this meeting, CS 1 made numerous consensually recorded telephone calls with BASLAN at the direction of the FBI.  CS 1 recorded the following conversations, among others, excerpted portions of which are provided in sum and substance and in part below:

a.   On February 24, 2013 at approximately 6:30 p.m., CS 1

4

had a conversation with BASLAN over the telephone,

which CS 1 recorded at the direction of the FBI,

regarding BASLAN's plans to take pictures of HENRY

engaging in sexual contact with VICTIM 1.  During the

conversation, BASLAN and CS 1 had the following

exchange.

CS 1:      What do you mean, like what do you want,
           what do you want her to do?

BASLAN:    Just like, I don't know, lick, suck,
           whatever.  Nothing big.  Just her holding a
           phone by herself taking a picture.  Why?

CS 1:      Like her holding.

BASLAN:    I want to take a picture and make it seem as
           if she took it by herself and we're not
           there.

CS 1:      Uh-huh.

BASLAN:    Like as if you dropped him off to babysit,
           she took a picture and I found it.

CS 1:      I see what you're saying, but what I'm
           concerned with is, um, how, like, no
           penetration.

BASLAN:    No. No. Nothing like that. Due, no.  Just
           her and him.

CS 1:      But what is she doing with her and him.

BASLAN:    Blow.

Later during the conversation, BASLAN stated the

following:

5

BASLAN:   I don't want to have any interaction with him. I think it will be hot seeing her

   . . .

I think it will be hot watching her blowing. That's it. Does that bother you?

Later during the conversations, BASLAN stated the following:

BASLAN:   I want to make a little video of her blowing whatever, him wouldn't even know what was going on. And then that's it. If, after we make the video, you and me want to take a round at her, whatever, ah, like fuck her while she's blowing him and whatever, just to get turned on, I'm fine with that. I, for me, I just want it more for safety because I have something else planned for us. But I want some, I have something else planned for us, but I want to have some safety thing on her and then she has actually access, I'll tell you in person, but she has access to the next thing. But I just want to make sure I secure her because [unintelligible].

b.   At approximately 6:40 pm on the same day, BASLAN and CS 1 had another telephone conversation, which CS 1 recorded at the direction of the FBI. During the conversation, BASLAN stated that HENRY is "dying for this," referring to the plan to have HENRY sexually abuse VICTIM 1. Later in the conversation, CS 1 expressed concerns of the "mental stability" of VICTIM 1, and BASLAN stated "if it's one minute he won't even

know what's going on," and "I think what we can do is also cover up his face really quick, as if you like pretend you're tickling him or something, and she just takes the pose, she doesn't actually do anything, she just takes the pose.  You understand what I mean?" BASLAN later stated "I'm not looking for an actual thing to happen.  I'm just looking for the pose of it. You could for all I care be on the other side, like, covering his face or whatever, and she just can do two licks or whatever and he wouldn't know the difference between her cleaning him or her doing whatever".

After some additional discussion, the call was ended by CS 1.

c.   At approximately 6:55 pm on the same day, BASLAN and CS 1 had another telephone conversation, which CS 1 recorded at the direction of the FBI.  They had a discussion of what HENRY would do with VICTIM 1. BASLAN indicated that HENRY did not need to perform the act and that it just needs to look like it is being performed.  Shortly after this, BASLAN stated the following:

7

BASLAN:     Exactly. That's the only reason for it.
            There is no, for me, the fact that he, the
            genderwise, does not appeal to me
            whatsoever. Nothing. Except that's the
            easiest one to have right now. The first one
            to have the picture and with the babysitting
            thing, it's something that, I, she has to
            arrange, so I have to just make sure that
            we're settled before hand.  That's it.  The
            act itself does not even have to be
            performed.  It has to look like on phone
            that it is.

Later during the conversation, BASLAN and CS 1 had the

following exchange:

BASLAN:     I'm not looking for it to be anything
            physical and the other stuff is all going to
            be when the person is passed out, [text
            omitted]

CS 1:       Like you're saying, like with the
            babysitting gigs, we're going to do the
            roofies, so it won't affect them.

BASLAN:     Exactly, they're going to be, yeah, yeah,
            well, we're going to, trust me, all what I'm
            doing nothing is going to be, no memories,
            nothing.  It's just you know.

Later during the conversation, BASLAN stated that

HENRY is "dying for me to have a baby with her for us

to whatever." CS 1 then asked "The two of you

together to have your own kid and then you raise it in

a sexual, like, upbringing kind of a thing?"  BASLAN

responded, "Right." Later during the conversation,

BASLAN and the CS 1 had the following exchange

8

concerning HENRY's interest in an eight-year-old girl

(VICTIM 2)[2] known to CS 1:

| | |
|---|---|
| BASLAN: | Like the thing with [PARENT 1], she's [HENRY] been begging me every single week. Like, I don't know what to tell you, it's been annoying with me, every single five minutes she brings it up because she wants to do it. |
| CS 1: | What do you mean, babysit [PARENT 1's] kid? |
| BASLAN: | Yes. |
| CS 1: | She's, she's, she's seen him before? |
| BASLAN: | Yeah, oh yeah yeah, and she wants to, you know, just go Dramamine, you know, the allergy thing and do it, um, and then you know just it knocks them out a little bit. |
| CS 1: | What do you mean? |
| BASLAN: | You know, Dramamine, the allergy medicine. It knocks you out, when you're a kid. |
| CS 1: | It won't, it won't, um, cause any like. |
| BASLAN: | No. It's kid's Dramamine, it's meant for, if you get car sick, you take it and you get knocked out. |
| CS 1: | So, she wants to give, who [VICTIM 2]? |
| BASLAN: | Yeah, [unintelligible]. |

---

[2]     VICTIM 2's parent is referenced in the complaint as PARENT 1.

BASLAN stated that HENRY wanted to use "kids Dramamine" to drug the children and that they could "rub it in their mouth a little bit".

5.   Following these conversations, BASLAN and CS 1 had additional conversations in which they agreed that BASLAN, HENRY, CS 1, VICTIM 1 and an additional 3-month-old boy[3] (VICTIM 3) would meet at a New Jersey hotel, so that HENRY could take sexually explicit photographs with VICTIM 1.

6.   On March 7, 2013, CS 1, who was equipped by the FBI with electronic monitoring devices including audio recorders and a video recorder, met with BASLAN and HENRY at the residence shared by BASLAN and HENRY.  During the meeting, CS 1 recorded BASLAN and HENRY discussing the plan to babysit children so that BASLAN and HENRY could sexually molest them.  During the meeting, BASLAN, HENRY and CS 1 had the following exchange regarding HENRY's ability to obtain babysitting jobs:

> CS 1:   I don't even know, I'd have to put my mind to working something like that out. I couldn't do that.  That would be, like, Kristen's problem that's the only way

---

[3]   VICTIM 3's age is often incorrectly identified as two months old during the course of recorded conversations.

|  | something like that would work out because guys would be like, yeah hi I'm a babysitter. |
|---|---|
| BASLAN: | No, no, no, she has [PARENT 2] that she has [unintelligible]. |
| HENRY: | I have, like. |
| CS 1: | [PARENT 2] has, um, a twelve-year-old daughter and a nine-year-old daughter? |
| BASLAN: | Something like that. |
| HENRY: | Y'all know I did work in schools [unintelligible], I worked with kids. |
| CS 1: | So you have references, so it'll look good. |
| HENRY: | Oh yeah, I have excellent references. |

Later during the meeting, HENRY and CS 1 had the following exchange:

| CS 1: | Where'd you babysit? Was this in Rochester? In Buffalo, whatever? |
|---|---|
| HENRY: | Yeah, I've babysat, since I was like fifteen, thirteen, fourteen. |
| CS 1: | So, you're, you've got like crazy references. |
| HENRY: | Yeah. |
| CS 1: | So it'll look good, that'll be very good. |
| HENRY: | Our little scheme. |
| CS 1: | Um, here's a crazy question, have you ever done this before? |
| HENRY: | No. |
| CS 1: | You've never done this before. |

11

HENRY:     No, like, I always remember
           [unintelligible], but I like wouldn't admit
           it to myself. When I was young I used to
           have, um, I wouldn't even admit to myself
           that it was like fantasies, they were just
           subconscious, you know, scenarios. And um,
           he was like the first human I admitted it
           to. This is how it came out, cause we both
           started kind of like, I don't even remember
           how it, like, got out there, but both of us
           were like, yeah, you know, I kind of like
           this, just have, it turned into this.

7.     Later during the meeting, BASLAN used his computer to
access child pornography which he played on his television while
HENRY and CS 1 were present.  Some of the child pornography
videos were captured on the video recording device provided to
CS 1 by the FBI.  The videos appeared to depict prepubescent
girls being vaginally and orally penetrated by an adult men's
penises.  Some of the videos had sound, and the children can be
heard. HENRY commented regarding one of the child pornography
videos that it was the "hottest one."  BASLAN described to CS 1
that the child pornography in his residence can be accessed on
his iPad, iPhone, and television, and that the devices were
accessing the child pornography from a central location.  BASLAN
told CS 1 that he uses encryption that he created and that his
files are "unhackable".

8.    CS 1 later canceled the planned meeting in New Jersey

with BASLAN and HENRY.  The meeting was later reset for March

19, 2013 at hotel in Jersey City, New Jersey.

9.    On March 18, 2013, CS 1, who was equipped by the FBI

with electronic monitoring devices including audio recorders and

a video recorder, met with BASLAN.  During the conversation,

they discussed plans regarding their meeting in New Jersey.  CS

1 indicated that he would be bringing VICTIM 1, VICTIM 2, and

VICTIM 3.  During the course of the conversation, BASLAN and CS

1 had the following exchange:

| CS 1: | What's the game plan? What's Kristen into? |
|---|---|
| BASLAN: | She's going to come and do whatever we tell her to do. That's it. |
| CS 1: | She's going to do whatever we tell her to do?  Really, it's like that? |
| BASLAN: | Well, yeah. |
| CS 1: | So, we're going to have a whole lot of fun? |
| BASLAN: | Yeah.  That's really about it.  We're just going to have fun and then I don't know. We'll finish having fun and we'll come back. |
| CS 1: | Yeah, I have to leave there because I have work in the morning. |
| BASLAN: | We won't stay there overnight.  Because we don't want to risk her waking up and seeing us.  Once we're done, we'll leave. |
| CS 1: | I'm not kicking you out or anything. |

BASLAN:     No, no, no, I wouldn't want to. I mean why
            should she even see us.

CS 1:       Yeah, exactly, how am I going to explain
            that?

BASLAN:     Right, right.  And I was thinking that when
            we do that deed, we'll all wear, like, ski
            masks and then we'll have a movie with ski
            masked robbers running playing in the living
            room, so if she gets scared we just pull out
            turn off the light, disappear and then
            you'll be sitting on the couch watching a
            ski mask movie.  Oh honey what happened did
            this movie get in your head again?

CS 1:       Um, you're going to bring the camera, by the
            way?

BASLAN:     Of course.

CS 1:       The HD one, right?

BASLAN:     Of course, I have a DSLR HD I'm going to
            bring, fully charged, fully loaded.

CS 1:       What's DLL-uh-uh?

BASLAN:     It's like a photo camera that takes videos.

CS 1:       But no faces.

BASLAN:     Of course not, well except Kristen.

CS 1:       Ok. Not even accidentally, Alright?

BASLAN:     Don't worry, man, like I said, just
            Kristen's and my dick's face.

Later during the conversation, BASLAN and CS 1 had the following

exchange:

BASLAN:     You know I was just saying, you should stop
            by before you leave to take that one shot
            with [VICTIM 1] because that's explainable

in my bedroom, or not [VICTIM 1] the younger one.

CS 1:      [VICTIM 3]?

BASLAN:    Just for like [unintelligible].

CS 1:      [VICTIM 3]'s only like, not even two months old.

BASLAN:    I know, that's what I'm saying, she can change his diaper and she can, we can take that picture on the bed, so that kind of like makes sense why she has the picture. Then you leave get [VICTIM 2], leave and we'll follow you to, we'll wait a little bit to.

CS 1:      And you'll follow me to the, um.

BASLAN:    Right, because that makes more sense, you know I want to take it with her camera versus the other camera, but I don't want to have too many cameras on me.

Later during the conversation, BASLAN and CS 1 had the following

exchange:

BASLAN:    Like I said, we can take it easy tomorrow, just get, I'm going to bring her and we get [VICTIM 2] take a few pictures, something like that or whatever and we just, that would be our first time and we'll take it further next one.

CS 1:      How far do you want to go?

BASLAN:    Not too far. Take pictures. Touch and then go down on her.  That's pretty much what I want out of it.

CS 1:      You just want to go down on her?

BASLAN:    Yeah. Nothing else, I mean.

CS 1:       For now?

BASLAN:     Because I don't know anything else about
            her, she's you know, what else can I do,
            we'll figure out as we get more advanced in
            this but the first time around, that's more
            than enough.

Later during the conversation, BASLAN and CS 1 had the following

exchange:

CS 1:       I don't know how I feel about penetration
            and shit like that.

BASLAN:     If we had better drugs and she's a different
            person, I wouldn't have a problem with it?

CS 1:       What do you mean by different drugs?

BASLAN:     Different person, better drugs, different
            situation, whatever.

CS 1:       You if it wasn't [text which may tend to
            identify VICTIM 2 has been omitted].

BASLAN:     No, it's not so much about that.  It's just
            more like, if she was a kid that's willing,
            it wouldn't be a problem per se.

CS 1:       How the fuck do you know a kid that's
            willing?  How do you pick that up?  Like
            what?

BASLAN:     Sure you can pick that up.  A lot of kids
            do, I mean I was in, when I was their age, I
            was willing.  I knew a lot of,  from the
            stuff that I've seen online and stuff,
            there's a lot more stuff online where the
            girls is like whoa go for it, more than even
            the guy.

CS 1:       Really?

BASLAN:     Yeah. Because from my few experiences, I've
            never acted out anything but more than once

|          | I've had the situation where the kid is totally willing. |
|----------|----------------------------------------------------------|
| CS 1:    | I wouldn't, I'd be too afraid if they were awake. |
| BASLAN:  | If the kid is willing, though, they, it wouldn't be your problem. |
| CS 1:    | It's not a problem? |
| BASLAN:  | No, because it wouldn't, they're going to want it. Trust me. Next time they see you, they're going to be like attacking you wanting more. |
| CS 1:    | Really? |
| BASLAN:  | Yeah. So.  But still. But in a different situation you could have anal with a kid and it wouldn't be a problem.  It wouldn't leave any marks or anything.  Then just vaginally you can't do because that. |
| CS 1:    | Will tear? |
| BASLAN:  | Yeah, but anal, yeah. |
| CS 1:    | Anal you can have, vaginal you can't? |
| BASLAN:  | One thing I noticed, all the guys all do anal first, they don't do vaginal unless the kid is willing and it's that kind of a situation. |
| CS 1:    | Because, that's proof? |
| BASLAN:  | Yeah, you can see that immediately. Anal you can't. |

Later during the conversation, BASLAN and CS 1 had the following

exchange referring to the plans to sexually abuse VICTIM 3:

17

BASLAN:    But tomorrow, definitely no penetration, we'll go the line where we you know, take pictures and video and that'll be cool.

CS 1:      Alright, I'm.

BASLAN:    If you want to do that, you don't have to bring, just bring [VICTIM 1] here for the picture.

CS 1:      Right.

BASLAN:    Just park your car, I'll bring him inside, take the picture, send her, send him out and then, you're good to go.

CS 1:      [VICTIM 1] or [VICTIM 3]?

BASLAN:    [VICTIM 3], I mean, [VICTIM 3]

CS 1:      The two month old.

BASLAN:    Yeah, the younger one, I keep mixing them up. The younger one.

CS 1:      [VICTIM 3] is the two month old.   [VICTIM 1] is the 16-month.

BASLAN:    For the picture, for the picture it doesn't make a difference.

CS 1:      What do you mean?

BASLAN:    The younger one.

CS 1:      It doesn't matter if he's a year and a half or two months, that's what you're saying?

BASLAN:    Yeah, yeah, exactly. And then, that's it. What we're going to have to do, I'm going to have her the camera with her hand in the position that it's the right angle. Click click click click.

CS 1:      She's just going to take the pictures herself?

18

BASLAN:     No I'm going to take them, but I'm going to
            have her hand behind the camera, make sure
            the picture is covered, and just going to
            have her hold her hand.

CS 1:       As if she, simulate as if she's the one
            taking the picture.

BASLAN:     Yup.

Later during the conversation, BASLAN and CS 1 had the following

exchange, which is relayed in sum and substance and in part.

CS 1:       Did you have this other one lined up?

BASLAN:     Yeah, I'm working on it.

CS 1:       The babysitting gig.

BASLAN:     Yeah, she's going to meet her in a couple of
            days to just to see, they meet Kristen, just
            to see

Later during the conversation, BASLAN indicated that VICTIM 2 is

more of a "stepping stone" and that he will "take a lot of

pictures and videos."  BASLAN also stated: "We'll have a good

amount of pictures and videos of [VICTIM 2] herself and then we

can just use it as jerk-off material or whatever."

10.   On March 19, 2013, CS 1 placed a recorded call to

BASLAN at the direction of the FBI and indicated that he would

not have time to bring VICTIM 1 and VICTIM 3 to BASLAN's

residence, so that HENRY could take a sexually explicit

photograph with VICTIM 3.  BASLAN and the CS 1 agreed that CS 1

19

would go by BASLAN's residence to pick up the drugs that would be used to incapacitate VICTIM 2, then BASLAN, HENRY and CS 1 would meet at the New Jersey hotel.  During recorded conversations that day, BASLAN and CS 1 also agreed on a code word that would indicate that CS 1 had VICTIM 1, VICTIM 2, and VICTIM 3 at the hotel and that BASLAN and HENRY could travel to New Jersey to sexually abuse them.

11.  In the early evening of March 19, 2013, CS 1 drove to BASLAN's residence, which was under surveillance by law enforcement.  CS 1 as equipped by the FBI with electronic monitoring devices including audio recorders and a video recorder.  After CS 1 arrived, BASLAN indicated to CS 1 that HENRY would be arriving with the drugs.  Shortly after that, law enforcement officers observed HENRY driving back to BASLAN's residence.  BASLAN, HENRY, and CS 1 then went inside BASLAN's residence and had a short discussion regarding the drugs.  CS 1 then left and immediately met with law enforcement officers whom he provided with Children's Benadryl and orange juice that he had been provided by HENRY.

12.  Later in the evening, at the direction of the FBI, CS 1 placed a recorded call to BASLAN and provided the code word

20

indicating he had obtained VICTIM 1, VICTIM 2, and VICTIM 3.   CS 1 also indicated the address of the hotel and room number.

13.   Later in the evening, law enforcement officers conducting surveillance on BASLAN's residence observed BASLAN's car leave the area.

14.   At approximately 9:15 p.m., BASLAN and HENRY arrived at the hotel in Jersey City, New Jersey.   Shortly after that they arrived at the room, whose number CS 1 had previously provided to BASLAN.   CS 1 let them into the room.   Law enforcement officers then entered the room and arrested BASLAN and HENRY.   Unbeknownst BASLAN and HENRY, no children were present in the room.   At the time of BASLAN's arrest, BASLAN was carrying a backpack.   During a search of the backpack incident to BASLAN's arrest, agents discovered, among other things, a Sony digital camera and a laptop computer.

WHEREFORE, Your affiant respectfully requests that the defendants BEBARS BASLAN and KRISTEN HENRY be dealt with according to law.

Aaron Spivack
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on March 20, 2013:

s/ *Roanne L. Mann*

THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE

# Exhibit B

JDL:TJS
F.#2013R00381

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 17 2013 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

  - against -

BEBARS BASLAN and
KRISTEN HENRY,

          Defendants.

**DEARIE, J.**

I N D I C T M E N T

Cr. No.

(T. 18, U.S.C., §§ 2241(c),
2251(a), 2251(e),
2252(a)(4)(B), 2252(b)(2),
2253, 2422(b), 2 and
3551 et seq.; T. 21,
U.S.C., § 853(p))

- - - - - - - - - - - - - - - -X

THE GRAND JURY CHARGES:

**MANN. M.J.**

<u>COUNT ONE</u>
(Travel With Intent to Commit Aggravated Sexual Abuse
of a Minor Less Than 12 Years of Age)

    1.  On or about March 19, 2013, within the Eastern

District of New York, the District of New Jersey and elsewhere,

the defendants BEBARS BASLAN and KRISTEN HENRY crossed a state

line with intent to engage in a sexual act, to wit: contact

between the mouth and the vulva, contact between the mouth and

the penis and the intentional touching, not through the clothing,

of the genitalia of another person who had not attained the age

of 12 years with an intent to abuse, humiliate, harass, degrade,

or arouse or gratify the sexual desire of any person, with

another person who had not attained the age of 12 years, to wit:

John Doe 1 and Jane Doe 1, individuals whose identities are known to the Grand Jury.

(Title 18, United States Code, Sections 2241(c), 2 and 3551 et seq.)

## COUNT TWO
### (Conspiracy to Sexually Exploit a Child)

2.    On or about and between February 1, 2013 and March 19, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants BEBARS BASLAN and KRISTEN HENRY did knowingly and intentionally conspire to employ, use, persuade, induce, entice and coerce a minor, to wit: John Doe 1, Jane Doe 1 and John Doe 2, individuals whose identities are known to the Grand Jury, to engage in sexually explicit conduct for the purpose of producing one or more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported using any means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce, and which visual depictions were to be produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce, by any means, to wit: one or more digital cameras, contrary to Title 18, United States Code, Section 2251(a).

(Title 18, United States Code, Sections 2251(e) and 3551 et seq.)

<u>COUNT THREE</u>
(Attempted Sexual Exploitation of a Child)

3.    On or about and between February 1, 2013 and March 19, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants BEBARS BASLAN and KRISTEN HENRY did knowingly and intentionally attempt to employ, use, persuade, induce, entice and coerce a minor, to wit: John Doe 1, John Doe 2 and Jane Doe 1, to engage in sexually explicit conduct for the purpose of producing one or more visual depictions of such conduct knowing and having reason to know that such visual depictions would be transported using any means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce, and which visual depictions were to be produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce, by any means, to wit: one or more digital cameras.

(Title 18, United States Code, Sections 2251(a), 2251(e), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FOUR</u>
(Attempted Coercion and Enticement of a Minor to
Engage in Illegal Sexual Activity)

4.    On or about and between February 1, 2013 and March 19, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants BEBARS BASLAN and KRISTEN HENRY using facilities and means of interstate and foreign commerce, to wit: a telephone, did knowingly and

intentionally attempt to persuade, induce, entice and coerce one
or more individuals who had not attained the age of 18 years, to
wit: John Doe 1, John Doe 2 and Jane Doe 1, to engage in sexual
activity for which a person can be charged with a criminal
offense, to wit: criminal sex act in the first degree, in
violation of Section 130.50 of the New York Penal Law and sexual
assault, in violation of Section 2C:14-2(b) of the New Jersey
Code of Criminal Justice.

(Title 18, United States Code, Sections 2422(b), 2 and
3551 et seq.)

## COUNT FIVE
(Possession of Child Pornography)

5.     On or about and between February 1, 2013 and March
19, 2013, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant BEBARS
BASLAN did knowingly and intentionally possess matter containing
one or more visual depictions, which visual depictions had been
mailed, and shipped and transported using a means and facility of
interstate and foreign commerce, and in and affecting interstate
and foreign commerce, and which were produced using materials
which had been mailed, and so shipped and transported, by any
means including by computer, the production of such visual
depictions having involved the use of one or more minors engaging

in sexually explicit conduct and such visual depictions were of such conduct.

(Title 18, United States Code, Sections 2252(a)(4)(B), 2252(b)(2) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION

6.   The United States hereby gives notice to the defendants charged in Counts One through Five that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 2253, of (a) any visual depiction described in Sections 2251, 2251A, 2252, 2252A, 2252B or 2260 of Title 18, United States Code, or any book, magazine, periodical, film, videotape, or other matter produced, transported, mailed, shipped or received in violation of such sections; (b) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from the offenses of conviction; and (c) any property, real or personal, used or intended to be used to commit or to promote the commission of the offenses of conviction or any property traceable to such property.

7.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the

court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 18,

United States Code, Section 2253(b), to seek forfeiture of any

other property of the defendants up to the value of the

forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 2253; Title 21,

United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

Case 1:13-cr-00220-RJD   Document 12   Filed 04/17/13   Page 7 of 7 PageID #: 46

F #2013R00381
FORM OBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

#### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*Bebars Baslan and Kristen Henry,*

Defendant.

## INDICTMENT

(T. 18, U.S.C., §§ 2241(c), 2251(a), 2251(e), 2252(a)(4)(B), 2252(b)(2), 2253, 2422(b), 2 and 3551 *et seq.*; T. 21, U.S.C. § 853(p))

*A true bill.*

_____
*Foreman*

*Filed in open court this* _____ _____ *day.*

*of* _____ _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

_____

*Tyler Smith, Assistant U.S. Attorney (718-254-6186)*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

 12 MISC 402

- - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION        :
OF THE UNITED STATES OF AMERICA        :     ORDER TO
FOR AN ORDER AUTHORIZING THE RELEASE   :     SERVICE PROVIDER
OF HISTORICAL CELL-SITE INFORMATION    :
- - - - - - - - - - - - - - - - - - - x

WHEREAS this Court has, upon the application of the

United States of America, entered an Order pursuant to 18 U.S.C.

§ 2703(c)(1) and (d), directing that within seven days AT&T (the

"service provider") disclose recorded information identifying the

base station towers and sectors that received transmissions from

646-288-3317, a telephone issued by the service provider and

subscribed to by Bebars Baslan, 4725 Shimerville Road, Apartment

3, Clarence, New York ("SUBJECT TELEPHONE 1") and 718-664-8135, a

telephone issued by the service provider and subscribed to by

Bebars Baslan, 4725 Shimerville Road, Apartment 3, Clarence, NY

("SUBJECT TELEPHONE 2")(collectively, the "SUBJECT TELEPHONES"),

at the beginning and the end of calls or text message

transmissions, and the mobile switching center serving the

SUBJECT TELEPHONE during any calls or text message transmissions,

for the period from 12:01 a.m. to 11:59 p.m. on March 19, 2013

(collectively, "the HISTORICAL CELL-SITE INFORMATION")

NOW THEREFORE, IT IS HEREBY:

ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d),

that the service provider shall supply within seven days the

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

13 MISC 402

- - - - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION          :
OF THE UNITED STATES OF AMERICA          :     ORDER
FOR AN ORDER AUTHORIZING THE RELEASE     :     OF AUTHORIZATION
OF HISTORICAL CELL-SITE INFORMATION      :
- - - - - - - - - - - - - - - - - - - - - x

        This matter having come before the Court pursuant to an

application by Assistant United States Attorney Tyler J. Smith,

an attorney for the Government as defined by Rule 1(b)(1) of the

Federal Rules of Criminal Procedure and a duly-authorized

representative of a "governmental entity" under 18 U.S.C.

§ 2703(c) and (d), requesting Orders pursuant to 18 U.S.C.

§ 2703(c)(1) and (d), directing that within seven days AT&T (the

"service provider") disclose recorded information identifying the

base station towers and sectors that received transmissions from

646-288-3317, a telephone issued by the service provider and

subscribed to by Bebars Baslan, 4725 Shimerville Road, Apartment

3, Clarence, New York ("SUBJECT TELEPHONE 1") and 718-664-8135, a

telephone issued by the service provider and subscribed to by

Bebars Baslan, 4725 Shimerville Road, Apartment 3, Clarence, NY

("SUBJECT TELEPHONE 2")(collectively, "THE SUBJECT TELEPHONES"),

at the beginning and the end of calls or text message

transmissions, and the mobile switching center serving the

SUBJECT TELEPHONES during any calls or text message

transmissions, for the period from 12:01 a.m. to 11:59 p.m. on

March 19, 2013 (collectively, "the HISTORICAL CELL-SITE INFORMATION");

UPON REVIEW OF THE APPLICATION, THE COURT HEREBY

FINDS THAT:

Pursuant to 18 U.S.C. § 2703(c)(1) and (d), the government has offered specific and articulable facts showing that there are reasonable grounds to believe that the HISTORICAL CELL-SITE INFORMATION is relevant and material to an ongoing criminal investigation into possible violations of federal criminal laws, including travel across state lines with intent to commit aggravated sexual abuse of a minor less than 12 years old, conspiracy to sexually exploit a child and attempted sexual exploitation of a child, and attempted coercion and enticement of a minor to engage in illegal sexual conduct, in violation of 18 U.S.C. §§ 2241(c), 2251(e), and 2422(b), being conducted by the Federal Bureau of Investigation (the "investigative agency"); now therefore,

IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d), that the service provider shall supply to the investigative agency within seven days the HISTORICAL CELL-

2

SITE INFORMATION for the period from 12:01 a.m. to 11:59 p.m. on

March 19, 2013.

Dated:      Brooklyn, New York
            May 15, 2013

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK